James C. BLACKMON and Mary E. Blackmon, Appellants,

v.

Raymond MIXSON and William B. Mixson, Appellees.

No. 05–87–01272–CV.

Court of Appeals of Texas, Dallas.

June 28, 1988.

gardless of whether the record contains some "evidence of probative force" in support of the verdict. *In re King's Estate*, 150 Tex. 662, 664–65, 244 S.W.2d 660, 661 (1951). Questions three and four and the jury's answers are as follows:

> Find from a preponderance of the evidence the market value of the Blackmon's trailer house on March 21, 1983.
>
> Market value means the amount that would be paid in cash by a willing buyer who desires to buy, but is not required to buy, to a willing seller who desires to sell, but is under no necessity of selling.
>
> Answer in dollars and cents, if any.
>
> Answer: $ 0

> . . . .

> Find from a preponderance of the evidence the market value of the Blackmon's personal effects and/or personal property that was in the trailer house on March 21, 1983.
>
> Market value means the amount that would be paid in cash by a willing buyer who desires to buy, but is not required to buy, to a willing seller who desires to sell, but is under no necessity of selling.
>
> Answer in dollars and cents, if any.
>
> Answer: $ 0

Boyd Waggoner, J. Allen Cox, Dallas, for appellants.

James L. Hicks, Jr., Dallas, for appellees.

Before WHITHAM, STEWART and LAGARDE, JJ.

WHITHAM, Justice.

Appellants, James C. Blackmon and Mary E. Blackmon, brought this action to recover damages from the appellees, Raymond Mixson and William B. Mixson, asserting that Raymond, a juvenile, set fire to the Blackmons' trailer house and that, as Raymond's father, William was also liable under section 33.01 of the Texas Family Code. We find no merit in the Blackmons' challenge to jury findings or assertions of jury misconduct. Accordingly, we affirm.

In their first point of error, the Blackmons contend that the jury's findings to questions three and four were contrary to the great weight and preponderance of the evidence. The question in the Blackmons' first point of error requires this court to consider and weigh all of the evidence in the case and to set aside the verdict and remand the cause for a new trial, if it thus concludes that the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust—this, re-

■ Market value of the Blackmons' property is the issue. The Blackmons assert that the testimony on market value of the destroyed property establishes market value in accordance with the instructions provided in questions three and four. The following constitutes *all* of the evidence that the Blackmons identify as establishing that the findings on market value are contrary to the great weight and preponderance of the evidence. The only evidence on damages is the testimony of owner James Blackmon. We recognize that the owner of the property can testify to its market value, even if he could not qualify to testify about the value of like property belonging to someone else. *Porras v. Craig*, 675 S.W.2d 503, 504 (Tex.1984). First we note Blackmon's testimony as to the trailer on direct examination.

[BLACKMONS' ATTORNEY]: All right. Now, have you, Mr. Blackmon, made a statement as to the damages or the market value of that trailer house that burned down out there?

[BLACKMON]: Yes, sir.

[BLACKMONS' ATTORNEY]: Did you check the market out for the purpose of replacing it?

[BLACKMON]: Yes, sir.

[BLACKMONS' ATTORNEY]: And, can you tell the jury what it cost? Did you replace it with something you thought was reasonably comparable?

[BLACKMON]: I thought it was comparable, yes, sir.

[BLACKMONS' ATTORNEY]: What did that replacement cost?

[MIXSONS' ATTORNEY]: Objection. Replacement cost has no bearing on the market value of this particular trailer at the time of the incident.

THE COURT: Sustained.

[BLACKMONS' ATTORNEY]: Do you feel like you are aware, Mr. Mixson, excuse me, Mr. Blackmon, of the market value of the trailer that burned at the time, based on your survey of trailers at about that time?

[BLACKMON]: *Oh I would think it was probably compared with what we got the replacement for.*

[BLACKMONS' ATTORNEY]: All right. And what was that value then, or the market value of that one?

[BLACKMON]: We paid around sixteen thousand for the replacement trailer.

[BLACKMONS' ATTORNEY]: And that was a similar trailer to the one that burned?

[BLACKMON]: Similar, yes.

(emphasis added). Next, we note Blackmon's testimony as to the personal property on direct examination.

[BLACKMONS' ATTORNEY]: And what kind of contents, what contents were burned? Do you have a list of those contents? You don't have the list up there with you now, do you?

[BLACKMON]: No, sir.

[BLACKMONS' ATTORNEY]: Did you make a list of stuff that was in there?

[BLACKMON]: Yes, sir.

[BLACKMONS' ATTORNEY]: Did you make your estimates as to the value to the best of your knowledge at that time of the contents of that trailer house?

[BLACKMON]: Yes, sir.

[BLACKMONS' ATTORNEY]: And what was that estimate?

[BLACKMON]: Almost ten thousand dollars.

Blackmon was then given Plaintiffs' Exhibit four, a list of the Blackmons' personal property in the trailer house. The exhibit was not admitted into evidence.

[BLACKMONS' ATTORNEY]: If you look at what they call the bottom line, the very end of it, the total of the value of those—

[BLACKMON]: Yes, sir.

[BLACKMONS' ATTORNEY]: —does that refresh your memory as to the estimate at the time of the exact total value?

[BLACKMON]: Yes, sir.

[BLACKMONS' ATTORNEY]: What was that figure?

[BLACKMON]: Nine thousand, six hundred sixty-three dollars, seventy-three cents.

[BLACKMONS' ATTORNEY]: Nine thousand, six sixty-two—

[BLACKMON]: —six sixty-three, seventy-three.

[BLACKMONS' ATTORNEY]: That was what you felt in your opinion at the time was the market value of those items that had been destroyed?

[BLACKMON]: Yes, sir.

The Mixsons' attorney then cross-examined Blackmon as to the trailer house.

[MIXSONS' ATTORNEY]: Now you know it wasn't as valuable as a new one, or are you going to tell us—

[BLACKMON]: No, sir, I'm not going to say it wasn't as valuable as a new one. An old Cadillac is more valuable than perhaps a new Chevrolet.

[MIXSONS' ATTORNEY]: You're not telling me this is a valuable antique or something.

[BLACKMON]: No, sir.

[MIXSONS' ATTORNEY]: It was a used trailer house.

[BLACKMON]: That is correct.

[MIXSONS' ATTORNEY]: And it's not as valuable as a new trailer house.

[BLACKMON]: I'm not going to say that.

[MIXSONS' ATTORNEY]: But you never tried to sell it to find out.

[BLACKMON]: No, sir.

The Mixsons' attorney then cross-examined Blackmon as to the personal contents in the trailer house.

[MIXSONS' ATTORNEY]: Again, Mr. Blackmon, when you were asked what the market value of all these items in the house was, you gave us a total of about ninety-six hundred dollars and some change, and up over each column is listing a value and, again, *it shows replacement value; correct*?

[BLACKMON]: *That's what it shows, yes, sir.*

[MIXSONS' ATTORNEY]: And, this was if you wanted [sic] for example the first item is a chest of drawers, and that's what it would have cost you to go buy a new one; right?

[BLACKMON]: Not necessarily. That's what we thought we had to get [sic] something comparable to that.

(emphasis added). The Mixsons' attorney then mentioned various items that were on the list—golf clubs, record player, hunting vest, television, popcorn popper, coffee maker, clothes, bed spreads, electric blanket, quilt, floor fan. This is the sum total of the evidence asserted to be contrary to the jury's findings.

 Even an owner's testimony is subject to some restrictions. In order for a property owner to qualify as a witness to the damages to his property, his testimony must show that it refers to market, rather than intrinsic or some other value of the property. This requirement is usually met by asking the witness if he is familiar with the market value of his property. *Porras*, 675 S.W.2d at 504–05. We conclude that Blackmon's testimony is no evidence of market value. Along with the Supreme Court, we should not be understood as retreating from the general rule that an owner is qualified to testify about the market value of his property. *See Porras*, 675 S.W.2d at 505. However, this is not just a case in which the lawyer failed to ask his client if he was familiar with the market value of the property. Instead, in this case the owner's testimony affirmatively showed that he referred to replacement costs rather than market value. *See Porras*, 675 S.W.2d at 505. While Blackmon was qualified to give an opinion of the market value of his property, he simply failed to do so. *See Porras*, 675 S.W.2d at 505. Because we have held that there is no evidence in the record of market value, it follows that the jury's findings of zero market value cannot be against the great weight and preponderance of the evidence. Indeed, the jury's two "$0" findings simply reflect what the jury heard about market value—nothing. We overrule the Blackmons' first point of error.

 Although we agree with the Mixsons that the Blackmons did not prove market value for the personalty at the time of the loss and, therefore, overrule the Blackmons' first point of error, we make one further observation concerning replacement value. We begin our observation by pointing out that the jury, without objection from the Blackmons, was charged to find the market value of the Blackmons' personal effects and/or personal property. Hence, the actual value to the owner of property such as household goods and wearing apparel was not at issue. Where property, such as household goods and wearing apparel, has no recognized market value, the actual value to the owner must be determined without resort to market value. *Allstate Insurance Co. v. Chance*, 590 S.W.2d 703, 704 (Tex.1979), *quoting Crisp v. Security National Insurance Co.*, 369 S.W.2d 326, 329 (Tex.1963). Thus, the rule that where household goods have no recognized market value, the trier of fact may consider, in determining the *actual value to the owner at time of loss*, the original cost, cost of replacement, opinions of qualified witnesses, including the owner, the use to which the property was put, as

well as any other reasonably relevant facts. *Allstate Insurance Co.*, 590 S.W.2d at 704 (emphasis added). Consequently, the jury could consider replacement value of the personalty in determining the *actual value to the owner at the time of loss.* Nevertheless, the Blackmons made no objection to the charge directing the jury to find *market value* of the Blackmons' personal property, market value meaning the amount a willing buyer would pay to a willing seller. The record does not reflect that the Blackmons requested that the jury find the *actual value* of the personalty to the Blackmons at the time of the fire. Again, the only evidence presented by the Blackmons to establish damages to their personalty was in the form of replacement cost of the property. Thus, there was no evidence of the amount a willing buyer would pay to a willing seller. There being no evidence of market value of the personalty, we again conclude that the jury's findings of zero market value cannot be against the great weight and preponderance of the evidence.

■■■ In their second point of error, the Blackmons contend that the trial court erred in refusing to grant them a hearing on their motion for new trial in connection with asserted jury misconduct; to wit: discussion of liability insurance among jurors during jury deliberations. The Blackmons sought to establish the misconduct by a juror's testimony. A juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict concerning his mental processes in connection therewith, except that a juror may testify whether any *outside influence* was improperly brought to bear upon any juror. TEX.R.CIV.P. 327(b) (emphasis added); *see* TEX.R.CIV.EVID. 606(b) (emphasis added). Thus, by the very wording of the two rules, the juror could not testify concerning a discussion of liability insurance among jurors during jury deliberations unless we are to hold that such a discussion is an "outside influence." We conclude that to state the problem is to find the answer. Consequently, we conclude further that a discussion of liability insurance among jurors during jury deliberations is not an "outside influence." An "outside influence" on the jury must emanate from outside the jury and its deliberations. *Clancy v. Zale Corp.*, 705 S.W.2d 820, 829 (Tex.App.—Dallas 1986, writ ref'd n.r.e.). It follows that the juror could not testify. Therefore, we conclude that the trial court did not err in refusing to grant the Blackmons a hearing on the motion for new trial. We overrule the Blackmons' second point of error.

Affirmed.