UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

------------------------

NO. 92-3415

------------------------

KENDALL STOCKSTILL,

Plaintiff-Appellant
Cross-Appellee,

versus

SHELL OIL COMPANY,

Defendant-Appellee
Cross-Appellant.

------------------------

Appeals from the United States District Court for the
Eastern District of Louisiana

------------------------
(September 27, 1993)

Before EMILIO M. GARZA and DeMOSS, Circuit Judges, and ZAGEL[1],
District Judge.

Zagel, District Judge.

I.

Kendall Stockstill is a former employee of Coastline
Construction, Inc., an independent contractor that supplies welding
services to Shell Oil Company.  In the fall of 1988 Shell informed
Coastline that Stockstill would no longer be allowed on Shell
facilities.  Shell's action against Stockstill stemmed from its
investigation of a sexual harassment and discrimination charge

_____

    [1]  District Judge of the Northern District of Illinois,
sitting by designation.

filed in the summer of 1988 by B. J. Holcombe, a former employee of a Shell subsidiary. As part of its investigation into Holcombe's charge, Shell interviewed an employee named Galen "Skipper" Berne. Berne told Shell's investigators that he had seen touching and heard name calling between Holcombe and Stockstill. Berne also said he had heard rumors that Stockstill placed a dildo in Holcombe's lunch bag. This information led Shell to ban Stockstill from its facilities. Shell did not interview Stockstill or B. J. Holcombe as part of its investigation.

Stockstill filed a charge of age discrimination against Shell with the Equal Employment Opportunity Commission (EEOC). Subsequently, Stockstill filed suit in federal district court alleging age discrimination, as well as violations of ERISA and Title VII against Shell and Coastline. Ann Ford, a Shell employee, was responsible for coordinating the company's response to charges filed with the EEOC. Ford had several telephone conversations with Althea Bertrand, an EEOC investigator, about Stockstill's age discrimination charge. Bertrand asked Ford why Shell barred Stockstill from its facilities. When first confronted with this question, Ford explained that Shell was not accusing Stockstill of sexual harassment but that he had engaged in inappropriate conduct in violation of Shell policies. Ford based her explanation on information contained in the investigative file compiled in connection with B. J. Holcombe's charge of sexual harassment and discrimination. In a subsequent conversation the EEOC investigator pressed Ford for specifics. Ford then told Bertrand that

2

Stockstill's conduct was "inappropriate" and "of a sexual nature." There were no further conversations between Shell employees and officials of the EEOC. Nor did Shell discuss the investigation with anyone outside of Shell other than the EEOC.

In 1991 Stockstill filed the defamation suit against Shell that is the subject of this appeal. The district court granted Shell's motion to consolidate Stockstill's 1990 action with the defamation suit. After consolidating the lawsuits, the district court granted summary judgment for Shell and Coastline on the age discrimination, ERISA and Title VII claims.[2] Before trial, Shell also filed two summary judgment motions on Stockstill's defamation claim. In the first motion Shell sought a ruling that statements made to the EEOC in response to a charge of discrimination are entitled to a qualified privilege. Shell contended that the qualified privilege forced Stockstill to prove malice or lack of good faith in order to prevail. Judge Carr denied the motion stating that a triable issue remained as to whether Shell acted in good faith in making the alleged defamatory statements.[3] In an

---

[2] The district court entered a partial judgment under Rule 54(b) on the dismissed claims and this Court dismissed Stockstill's appeal for lack of jurisdiction on February 28, 1992. The United States Supreme Court subsequently denied Stockstill's application for a Writ of Certiorari.

[3] Judge Carr apparently agreed with Shell that Ford's statements to the EEOC investigator were qualifiedly privileged. This must be so since Judge Carr later granted judgment as a matter of law in favor of Shell because Stockstill failed to show that Ford made the allegedly defamatory comments with malice or in bad faith. This would also explain why Shell did not appeal the district court's denial of their initial summary judgment motion.

amended summary judgment motion Shell argued that statements made to the EEOC in response to a charge of discrimination are entitled to an absolute privilege. Judge Carr denied Shell's amended motion as well.

The case proceeded to trial before a jury on April 13, 1992. B. J. Holcombe testified that Stockstill had called her a "bitch" but had never sexually harassed her. Stockstill admitted that he called Holcombe a "bitch" but would not agree that such conduct was inappropriate. On April 14, at the conclusion of Stockstill's case, the district court granted Shell's motion for judgment as a matter of law. The court held that there was no evidence that the statements made to the EEOC were made with malice or in bad faith.

Stockstill appeals the district court's judgment in favor of Shell and the court's exclusion of evidence regarding Stockstill's claim of age discrimination. Shell cross appeals the district court's denial of its motion for summary judgment based on absolute privilege. We affirm.

## II.

Stockstill makes multiple arguments for reversal, all of which lack merit. Initially, he contends the trial court erred when it granted Shell's motion for judgment as a matter of law. We review the district court's judgment as a matter of law de novo. In the Matter of Worldwide Trucks, Inc., 948 F.2d 976, 979 (5th Cir. 1991). In so doing, we examine the entire record in the light most favorable to the party opposing the motion, drawing all reasonable inferences in favor of that party. Id. Before a judgment as a

4

matter of law (formerly a directed verdict) will be granted, "the facts and inferences must point so strongly and overwhelmingly in favor of the moving party that no reasonable jury could arrive at a contrary conclusion." Id. But a "mere scintilla of evidence" is not sufficient to present an issue for the jury. Id.

Stockstill says that after he presented his case-in-chief "there was sufficient conflict in substantial evidence to create a jury question" as to whether Shell acted with malice. Appellant's Brief at 8. Stockstill is mistaken. Of the two areas of "conflict" he identifies one is immaterial and the other presents no conflict at all.

One "conflict" concerns the date of Stockstill's discharge. Stockstill says that while the parties stipulated to a discharge date of September 12, 1988, Shell executives testified that he was discharged on October 3, 1988. Stockstill interprets this discrepancy as an attempt by Shell to bolster its claim that its action against him came after extensive investigation. Stockstill's focus on the date of discharge and the thoroughness of Shell's investigation is misplaced. What matters is whether Ann Ford, who did not participate in the investigation of Holcombe's sexual harassment charge, acted with malice or reckless disregard for the truth when she relied on the Shell investigative file in responding to the EEOC investigator's inquiries. The

answer to that question is not affected by the three-week discrepancy concerning Stockstill's date of discharge.

The other alleged evidentiary "conflict" that Stockstill complains of relates to Shell's defense at trial. Stockstill asserts that before trial Shell maintained it discharged Stockstill because he engaged in inappropriate conduct of a sexual nature. During trial Shell stated that the inappropriate conduct took the form of inappropriate language. Based on his brief, it is difficult to know why Stockstill finds Shell's positions irreconcilable or, for that matter, why any of this matters. It suffices to say that Shell's contentions before trial are not inconsistent with its defense at trial. Inappropriate conduct of a sexual nature does not necessarily imply that the conduct at issue included physical contact. Conduct that is inappropriate and of a sexual nature can just as easily take the form of verbal abuse. That is what Shell maintains occurred in this case and the record supports Shell on this point. In short, neither of the evidentiary "conflicts" identified by Stockstill warrant reversal of the district court's judgment as a matter of law in favor of Shell.

Next, Stockstill asserts, without elaboration, that he did not have to show falsity or malice at trial because Shell's statements were defamatory per se. This argument rings hollow. Ford's cautiously worded explanation for why Shell took action against Stockstill does not amount to an explicit accusation that he sexually harassed or discriminated against anyone. Cf. Rouly v.

6

Enserch Corp., 835 F.2d 1127, 1129 (5th Cir. 1988) (remarks not defamatory per se where defendant did not explicitly accuse plaintiff of criminal activity). If the words "inappropriate conduct of a sexual nature" are defamatory, their "intent and meaning . . . must be gathered not only from the words singled out as libelous, but from the context as well . . ." Madison v. Bolton, 102 So.2d 433, 438 (La. 1958). By definition, therefore, the statements at issue are not defamatory per se because a defamatory per se statement must be defamatory on its face, without reference to its context. Id.; see Rouly, 835 F.2d at 1129 (defamatory per se statements analyzed "without reference to their context"). As noted below, Stockstill himself concedes that the words spoken by Ann Ford to the EEOC investigator take on a defamatory innuendo when considered in the context of the sexual harassment investigation in which they were uttered.

Perhaps sensing the futility of his defamatory per se argument, Stockstill argues alternatively that the allegedly defamatory statements carry a defamatory innuendo for which the truth of the statements is not a defense unless the innuendo is likewise truthful. Stockstill reasons that the allegedly defamatory statements, arising as they did in the investigation of B. J. Holcombe's sexual harassment charge, carry the innuendo that Stockstill was involved in the sexual harassment of Holcombe. According to Stockstill, even if Shell was unaware of the falsity of this innuendo, it was for the jury to decide whether Shell

7

exhibited a reckless disregard for the truth when it relied on one employee's version of Stockstill's treatment of B. J. Holcombe.

This argument suffers from two fatal flaws. First, it wrongly focuses on Shell's investigation rather than whether or not Ford exhibited malice by relying on Shell's investigative file when responding to EEOC inquiries. Second, Stockstill presented no evidence that Shell acted recklessly in its investigation or that Ann Ford recklessly relied on the investigative file. Stockstill offered no evidence, for example, that Ford, or anyone at Shell, knew that the alleged defamatory statements were false when they were spoken to the EEOC.[4] In fact, the record supports Ford's good faith belief in the accuracy of the information contained in the investigative file. Ford based her remarks to the EEOC on notes taken during an interview of Skipper Berne, and Berne confirmed the accuracy of the notes at trial. Nor did Stockstill offer evidence that anyone at Shell acted recklessly in believing the information supplied by Skipper Berne. Instead, Stockstill simply denied any wrongdoing.

Shell correctly notes that even if the statements are defamatory per se, the plaintiff must still prove malice when the circumstances of a communication are such that the person who made the statement is entitled to a qualified privilege. And Shell

---

[4] Shell does not concede the falsity of the alleged defamatory statements. On the contrary, Shell contends the statements are true. Shell maintains that Stockstill's admission at trial that he had routinely called B. J. Holcombe a "bitch" is sufficient to show that he did in fact engage in inappropriate conduct of a sexual nature.

8

maintains that Ford's statements to the EEOC are entitled to such a privilege.  "Qualified privilege is an affirmative defense to defamation provided by Louisiana law for one who can prove that he made a statement (1) in good faith (2) on a matter in which he had an interest or a duty (3) to another person with a 'corresponding interest or duty.'"  Rouly, 835 F.2d at 1130 (citations omitted).  Good faith or lack of malice "means that 'the person making the statement must have reasonable grounds for believing that it is true and he must honestly believe that it is a correct statement.'" Id. (citations omitted).  The plaintiff has the burden of proving malice or lack of good faith.  Id.

The statements at issue here are entitled to a qualified privilege under Louisiana defamation law.  The allegedly defamatory statements made to the EEOC related to the charge of discrimination that Stockstill filed against Shell.  Both Shell and the EEOC had an interest or duty regarding the charge.  The EEOC is authorized by law to investigate charges of discrimination against employers.  Shell had a corresponding duty to cooperate in the investigation and an interest in defending itself against Stockstill's charge.  It was Ann Ford's job to coordinate Shell's response to charges, such as Stockstill's, filed with the EEOC.  And, as previously noted, Stockstill offered no evidence that Ford, or anyone else at Shell, had reason to believe the information supplied by Skipper Berne was not true.  On the contrary, the evidence shows that Ford had reasonable grounds for believing that the information contained

9

in the investigative file was accurate. Thus, Stockstill has failed to meet his burden of proving malice or lack of good faith.[5]

Lastly, Stockstill seeks reversal because the trial judge excluded testimony concerning Stockstill's prior charge of age discrimination against Shell. Stockstill cites no authority to support this argument; he merely contends that the trial judge's rulings on this issue were inconsistent. Shell's response to this purported basis for reversal is equally brief, though more persuasive. Shell notes that Stockstill made no offer of proof that would allow this Court to determine if a substantial right had been affected by the trial court's ruling, as required by Rule 103(a)(2) of the Federal Rules of Evidence. Generally speaking, "this circuit will not even consider the propriety of the decision to exclude the evidence at issue, if no offer of proof was made at trial." United States v. Winkle, 587 F.2d 705, 710 (5th Cir.), cert. denied, 444 U.S. 827 (1979). While a formal proffer is not essential, the proponent of the evidence "must show in some fashion the substance of the proposed testimony." Id. There is no indication in the record as to precisely what evidence Stockstill

---

[5] We are expressly refusing to decide Shell's cross appeal, in which Shell challenges the district court's denial of its motion for summary judgment based on an absolute privilege under federal law. The district court implicitly found, and we have expressly held, that Ford's statements to the EEOC are qualifiedly privileged under Louisiana law. Since the qualified privilege provides sufficient protection for Shell, this Court need not inquire whether Shell is entitled to greater protection. We express no opinion about whether federal common law accords an absolute privilege to statements made by employers to the EEOC in the course of an EEOC investigation. Nor do we decide whether federal law provides a qualified privilege different from or greater than the privilege supplied by Louisiana law.

10

wanted to present at trial.  Therefore, we do not have an adequate basis for reviewing the district court's ruling.

The judgment of the district court is AFFIRMED.