United States Court of Appeals,

Fifth Circuit.

No. 93-9069.

GREAT PLAINS EQUIPMENT, INC., Plaintiff-Appellee,

v.

KOCH GATHERING SYSTEMS, INC., Defendant-Appellant.

GREAT PLAINS PIPELINE CONSTRUCTION, INC., Plaintiff-Counter Defendant-Appellee,

v.

KOCH GATHERING SYSTEMS, INC., Defendant-Counter Plaintiff-Appellant.

Feb. 27, 1995.

Appeal from the United States District Court for the Northern District of Texas.

Before HIGGINBOTHAM, SMITH and PARKER, Circuit Judges.

ROBERT M. PARKER, Circuit Judge.

This case originated from two cases filed in Texas state court. Appellee Great Plains Equipment (GPE) filed suit against Appellant Koch Gathering Systems, Inc. (Koch) seeking damages for the destruction of two pieces of construction equipment based on theories of negligence. Appellee Great Plains Pipeline Construction, Inc. (GPP) filed the other case against Koch seeking damages for breach of contract. Koch removed both cases to federal court based on the parties' diversity of citizenship, and filed a counterclaim against GPP for liquidated damages for its failure to complete the pipeline on time. The district court consolidated the cases, which were then tried to a jury. The jury returned a verdict in favor of GPE and GPP on all claims. The reformed

judgment awarded $180,000 plus prejudgment interest of $11,094.75 to GPE for the equipment, $228,324.94 plus prejudgment interest of $38,843.55 to GPP for the breach of contract, and attorney's fees for both Appellees against Koch.

## THE *BATSON* CLAIM

A party to a civil suit can challenge another party's use of a peremptory strike that excludes a prospective juror on the basis of that juror's race. *Edmonson v. Leesville Concrete Co.,* 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991); *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). A party may challenge another's peremptory strike regardless of the race of the challenging party since the objection asserts the juror's equal protection rights. *Powers v. Ohio,* 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991). However, we will affirm the district court's ruling on a *Batson* challenge unless it is clearly erroneous, that is unless we are left with the definite and firm conviction that a mistake was committed. *United States v. Roberts,* 913 F.2d 211, 214 (5th Cir.1990), *cert. denied,* 500 U.S. 955, 111 S.Ct. 2264, 114 L.Ed.2d 716 (1991).

This circuit has developed a three-step process for evaluating *Batson* claims. First, the complaining party must make a *prima facie* showing that opposing counsel has exercised a peremptory challenge on the basis of race. Once this showing has been made, the burden shifts to the striking party to articulate a race-neutral explanation for the strike. Thereafter, the court must determine whether the *Batson* claimant has proven purposeful

2

discrimination. *United States v. Bentley-Smith,* 2 F.3d 1368, 1373 (5th Cir.1993).

Koch relies on three circumstances surrounding the challenged strike to establish a *prima facie Batson* violation in this case. First, appellees' counsel struck the only African-American juror on the venire panel. Second, Koch contends that there was a complete absence of any information developed during *voir dire* by either party or the court about the juror in question that distinguished him from any of the non-African-American jurors Appellees' counsel did not strike. Third, Koch's trial counsel, N. Sue Allen, is an African-American. Koch contends that Allen's race raises the possibility that Appellees' counsel struck the juror on account of his race, because he might have been more receptive to the presentation of Koch's counsel. We will assume, without deciding, that Koch established a *prima facie Batson* violation.

The burden then shifted to Appellees to proffer a reason for the strike that is facially race neutral, clear, reasonably specific, and related to the case to be tried. *United States v. Romero-Reyna,* 867 F.2d 834, 837, *aff'd on remand,* 889 F.2d 559 (5th Cir.1989), *cert. denied,* 494 U.S. 1084, 110 S.Ct. 1818, 108 L.Ed.2d 948 (1990); *United States v. Clemons,* 941 F.2d 321, 323 (5th Cir.1991). Appellees' counsel responded to the *Batson* challenge by telling the court:

> We had information that the gentleman was not paying his child support, and other information. We thought he might not be a good juror for our particular case.

After counsel proffered his reasons, the court responded,

3

"Very well." Koch's attorney replied, "Thank you, Judge." And the trial went forward.

The challenging party then had the burden to show that the reason given was pretextual or otherwise inadequate. Koch made no attempt to attack the validity of the proffered reason at trial. On appeal, Koch maintains that the proffered reason was inadequate because it was based on information not in the record, and therefore might have been based on inaccurate information or even appellees' counsel's mendacity. Koch also argues that the trial court failed to rule on the challenge.

We find that, in fact, the court ruled against Koch on the *Batson* issue and that the court's ruling was not clearly erroneous. First, Koch did not carry its burden of establishing that the proffered reason was inadequate or pretextual in the trial court. Koch did not raise these issues at all.

Second, there is no authority for the proposition that we should uphold the district court's credibility assessment only if it is supported by evidence in the record. In fact we have specifically declined to adopt such a requirement, *United States v. Cobb,* 975 F.2d 152, 155 n. 3 (5th Cir.1992), *cert. denied,* --- U.S. ----, 113 S.Ct. 1596, 123 L.Ed.2d 160 (1993), because peremptory challenges can be based on anything except illegal discriminatory bias. *Batson,* 476 U.S. at 89-90, 106 S.Ct. at 1719.

### THE RECORD

Koch urges two points of error on appeal that require this Court to review the sufficiency of the evidence. However, the

4

record on appeal is incomplete. Much of the testimony at trial was read into the record from depositions of witnesses who did not appear in person. The depositions themselves are part of the record on appeal. However, there is nothing in the record that indicates which portions of the depositions the jury heard. The transcription of the trial merely states, "Whereupon, deposition excerpts were read in open court," each time a witness was called by deposition, without any reference to the pages or lines read. This court cannot speculate as to what was or was not done or said in the court below. Sitting as a reviewing court, we may not go behind the record. *Smith v. United States,* 343 F.2d 539, 541 (5th Cir.), *cert. denied,* 382 U.S. 861, 86 S.Ct. 122, 15 L.Ed.2d 99 (1965). Koch had the responsibility to provide all portions of the proceedings that bear on its points of error attacking the sufficiency of the evidence. FED.R.APP.P. 10(b)(2) provides:

> If the appellant intends to urge on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the evidence, the appellant shall include in the record a transcript of all evidence relevant to such finding or conclusion.

We have determined that there was sufficient evidence in the transcription of the proceedings to allow a reasonable factfinder to return the verdicts reached by the jury. If testimony in the untranscribed portions of the proceedings calls that conclusion into question, it cannot form the basis of reversal.

It is impossible for us to determine from the record why the reporter failed to include in the transcript the deposition portions offered or even references to line and page. We invite

5

the district judge to review the procedures used in this case so as to avoid similar problems occurring in the future.

THE CONTRACT CLAIM

a. Sufficiency of the evidence.

GPP's claim arose out of a contract with Koch for the construction of an 81-mile segment of a crude oil pipeline. GPP and Koch entered into a contract on July 3, 1990 that required GPP to complete the pipeline by August 25, 1990. The contract obligated Koch to secure all necessary rights-of-way for the construction.

Construction began about July 16, 1990. On July 23, 1990 Witten, a Texas state inspector, shut down the work because GPP did not have a "right to be on the State's right-of-way." Koch contended that the necessary right-of-way permit had been secured, but Witten shut down the work either because there had been no pre-bid meeting, which was an unreasonable interpretation of the Texas rules, or in the alternative, because GPP violated Texas state rules concerning keeping the adjacent highway free of mud, and limiting the amount of ditch that was open at any one time. A different state inspector had been on the job site the week before and had not mentioned a right-of-way problem.

In addition to the delays caused by the disputes on the state right-of-way, GPP's crews were shut down toward the end of the project because some private right-of-way permits were not timely secured. About 19 miles from the end of the pipeline, a 8500 foot section in Frio County, Texas lacked a private right-of-way permit

6

until August 13, 1990. Testimony also established that GPP did not receive some private right-of-way permits until August 29, four days after the deadline for completion under the terms of the contract.

At the close of GPP's case, Koch made a motion for judgment pursuant to FED.R.CIV.P. 50, arguing that the evidence was overwhelming that Koch was not responsible for the delays experienced by GPP in the construction of the pipeline. The district court denied Koch's motion and the jury returned a verdict for GPP on the breach of contract claim.

Koch argues on appeal that there was insufficient evidence to create a fact question for the jury on the issue of whether GPP's delays were caused by Koch. After viewing the evidence in the light most favorable to GPP and drawing all reasonable inferences in its favor, we must determine whether the facts and inferences point so strongly in favor of Koch that no reasonable jury could return a verdict for GPP. *Stockstill v. Shell Oil Co.,* 3 F.3d 868, 870 (5th Cir.1993), *cert. denied,* --- U.S. ----, 114 S.Ct. 1307, 127 L.Ed.2d 658 (1994).

Question number 5 on the verdict form asked:

Did Koch Gathering Systems, Inc. fail to timely provide to Great Plains Pipeline Construction, Inc. the right-of-ways on the state highway or private property necessary to construct the pipeline in question?

The jury answered, "Yes." The evidence strongly supports that answer. The next question asked:

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Great Plains Pipeline Construction, Inc. for the additional costs it incurred, if any, resulting

7

from such failure, if any, on the part of Koch Gathering Systems, Inc.?

The jury answered, "$228,324.94." This answer appears to include compensation for delays which resulted from the shut downs on both the state and private rights-of-way. Under Texas law, which controls this diversity case, in order for a contractor to recover damages for losses due to delay of its work under a contract, it must prove that the defendant "was responsible for the act or omission which caused the delay or hindrance." *Shintech Inc. v. Group Constructors, Inc.,* 688 S.W.2d 144, 148 (Tex.Civ.App.1985). Koch argues that it was not responsible for the delay on the state right-of-way, and thus for the portion of the damages attributable to that delay. Koch asks us to hold, as a matter of law, that the shut down was caused by GPP's violations of state regulations, such as allowing mud to accumulate on the highway and opening too much ditch at one time. Koch argues in the alternative that if Witten shut down the work based on the failure to have a pre-bid meeting, that failure did not amount to a breach of Koch's contractual duty to secure rights-of-way. The contract language in question provides:

> [Koch] shall secure necessary permits from proper regulating bodies for the laying of the line to be constructed hereunder[.]

Koch does not dispute that it had a contractual duty to secure the necessary rights-of-way. Koch also acknowledges that there was a conflict in the evidence as to what motivated the state's shut downs, and that the jury could have reasonably believed that the state shut construction down because there was no pre-bid meeting.

8

However, Koch contends that, having received what it refers to as a right-of-way permit from the state, it fulfilled its contractual obligation, and failure to participate in a pre-bid meeting was not a breach of the contract. Koch's theory of the case was that Witten's pre-bid meeting requirement was not part of the ordinary permit process but a capricious and unreasonable requirement that he was not empowered to impose under state regulation.

The record does not conclusively support Koch's view of the evidence. From the limited and conflicting testimony in the record, a reasonable jury could have concluded that Koch failed to secure a "necessary permit[ ] from [a] regulating body," and that that breach resulted in the shut down on the state right-of-way. We therefore reject Koch's contention that there was insufficient evidence on this point.

b. Parol evidence.

Koch next complains that the district court permitted testimony, over Koch's objection, that prior to entering the written contract Koch promised that there would be no special restrictions on GPP in working on the state right-of-way. Koch argues that since this alleged prior oral agreement was not made part of the contract, introduction of it violated the parol evidence rule. Koch, as the party asserting error, has the burden of proving that its substantial right was affected by an erroneous ruling. *Smith v. Wal-Mart Stores,* 891 F.2d 1177, 1180 (5th Cir.1990). The jury specifically found that the GPP's damages were the result of Koch's failure to provide rights-of-way necessary to

9

construct the pipeline.  Evidence that Koch promised "no special restrictions" and then breached that promise, while inadmissible, did not affect Koch's substantial right, as it was irrelevant to the issue that the jury was called on to decide.

## PROPERTY DAMAGE CLAIM

Two pieces of construction equipment which were owned by GPE and rented to GPP for use in the pipeline project were destroyed in a fire on one of Koch's facilities.  Koch does not contest liability for the damages.  It also concedes that the value of the equipment after the fire was $-0-, and the market value of one item, a small ditcher referred to as a J-40, was $20,000.  The dispute on appeal centers on the market value of the large trencher ("the 247") before the fire.

The evidence established that approximately two months before the fire, GPE located the 247 in question on the yard of a company that had gone out of business.  The machine was in like-new condition with only 300 hours on it;  it still had factory paint on the buckets indicative of minimal use.  GPE was able to make an extremely advantageous purchase of the equipment by paying only $45,000 for it.  The Koch job accounted for approximately 300 additional hours on the 247.  The advantageous purchase by GPE is further evidenced by the fact that Koch's expert witness on values opined that it had a reasonable cash value at the time of the fire of $85,000.

The president of GPE, Clark Besack, also testified regarding value of the 247.  An owner of property under Texas law may express

an opinion on the value of the property. However, Mr. Besack was better positioned to provide credible opinion evidence to the jury than one who simply was the owner of a piece of equipment. In the eight years he served as president of GPE, he had purchased over $6,000,000 worth of such equipment. Mr. Besack's testimony referenced two other pieces of equipment, one that he characterized as "pretty equivalent" was priced at $250,000, and one that was "comparable" to the 247 was $165,000. He arrived at his opinion of comparability by balancing the fact that it was a little bit heavier but had more hours on it. Comparables may be used as a basis for opinions on fair market value. What one happened to pay for a replacement piece of equipment may not, since the replacement may or may not be comparable to the equipment being replaced.

Koch contends first, that the district court erred in admitting evidence of the replacement cost of the property and second, that there was no evidence to support the jury's verdict awarding GPE $180,000 for the total property damage claim.

Whether Koch preserved the point of error regarding admissibility is a close question. A relevancy objection was overruled to the question inquiring about what Mr. Besack did to replace the equipment. Mr. Besack then recited what he looked at, the efforts he made to locate other equipment, what he considered and how he finally found a piece that he considered to be comparable. When the question was asked whether he had an opinion as to the value of the ditcher he lost in the fire, there was no objection to either question or answer.

11

Koch asserts here that Mr. Besack's opinion that the 247 was worth $165,000 was actually an opinion relating to replacement value as opposed to cash market value and under the holding in *Blackmon v. Mixson,* 755 S.W.2d 179 (Tex.App.—Dallas 1988), was inadmissible and amounts to no evidence. We disagree. *Blackmon* holds that while an owner can testify about the market value of his property, his testimony concerning the replacement value of his property is not evidence of market value. Therefore, if replacement value of the property is the only evidence in the record, there is no evidence of market value. *Id.* at 182. *Blackmon* does not hold that evidence of replacement value is inadmissible, or that admission of such evidence requires reversal.

Finally, Koch made no motion for judgment as a matter of law on the property damage question. Where a party has failed to preserve the issue of sufficiency of the evidence for appellate review by moving for judgment as a matter of law (formerly directed verdict) in the trial court, our inquiry is limited to whether there was any evidence to support the jury's verdict, irrespective of its sufficiency. *Wellborn v. Sears, Roebuck & Co.,* 970 F.2d 1420, 1424 (5th Cir.1992). There was ample evidence in the record on which the jury could base its decision that the value of the lost equipment was $180,000 by assigning $20,000 for the J-40 and $160,000 for the 247.

## CONCLUSION

For the foregoing reasons, we AFFIRM the district court's judgment in all respects.