# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

———

No. 13-40878

United States Court of Appeals
Fifth Circuit

**FILED**

December 18, 2014

Lyle W. Cayce
Clerk

———

Consolidated with 14-40545

In the Matter of:  ISBELL RECORDS, INCORPORATED,

>  Debtor

-----------------------------

ALVERTIS ISBELL, doing business as Alvert Music,

>  Plaintiff - Appellee

v.

DM RECORDS, INCORPORATED,

>  Defendant - Appellant

———————

Appeals from the United States District Court
for the Eastern District of Texas

———————

Before HIGGINBOTHAM, CLEMENT, and HIGGINSON, Circuit Judges.

STEPHEN A. HIGGINSON, Circuit Judge:

The popular song Whoomp! (There It Is)[1] was released in 1993.  For more than half of the song's existence—since 2002—the parties to this action have

---

[1] The song's title apparently refers to a chant commonly uttered when women disrobed in South Florida strip clubs in the early 1990s.  *See* Robert Sanchez, *Whoomp! (There It Was)*, 5280 MAGAZINE, (June 2013), http://www.5280.com/magazine/2013/06/whoomp-there-it-was.

No. 13-40878 c/w 14-40545

been litigating the question of who owns the composition copyright to the song. After an eleven-day trial, the district court ruled that, as a matter of law, Plaintiff-Appellee Alvertis Isbell owned the copyright and Defendant-Appellant DM Records, Inc. was liable for copyright infringement. The jury awarded over $2 million in damages. DM Records appeals these and several other district court decisions. We AFFIRM the district court in all respects.

## FACTS AND PROCEEDINGS

In 1993, Cecil Glenn and Steven James (collectively, "Tag Team") wrote and produced the song Whoomp! (There It Is) ("Whoomp!"). Tag Team entered into an Exclusive Producers Agreement ("Recording Agreement") with Bellmark Records ("Bellmark") that governed the relationship between Tag Team and Bellmark. The Recording Agreement discussed, *inter alia*, the ownership of the sound recordings and the payment of royalties. Exhibit B to the Recording Agreement, titled "Assignment of Compositions and Rights to Copyright" addressed Whoomp!'s composition copyright. The first paragraph stated:

> [F]or good and valuable consideration, receipt of which is hereby acknowledged, the undersigned Assignors do hereby sell, assign, transfer and set over unto *Bellmark's affiliated designee publisher*, its successors and assigns, fifty percent (50%) of the entire rights, title and interests throughout the world and universe, including, without limitation, the copyrights and any registration and copyright applications relating thereto . . . .

(emphasis added). The second paragraph stated:

> and fifty percent (50%) of the right, title and interest of the undersigned Assignors, vested and contingent therein and thereto, subject to the terms and conditions of the Memorandum Agreement between Assignors and Assignee dated effective March

---

The word "Whoomp!" appears to be a neologism, perhaps a variant of "Whoop!," as in a cry of excitement.

No. 13-40878 c/w 14-40545

30, 1993 and for the term of the copyrights and all renewals and extensions thereof.

The third paragraph stated:

Assignors agrees that the Assignee(s) has the sole, exclusive worldwide and universal right to administer and exploit the copyrights and musical composition, to print, sell, dramatize, use and license any and all uses of the copyrights and compositions, to execute in Assignee(s) own name any and all licenses and agreements whatsoever affecting or respecting the compositions and copyrights . . . . This statement of exclusive rights is only in clarification and amplification of the rights of Assignee(s) and not in limitation thereof.

Alvertis Isbell ("Bell") was the president of Bellmark, which was in the business of owning sound recordings. In 1977, Bell formed his own music publishing company, Alvert Music.

In 1997, Bellmark filed for bankruptcy in the Eastern District of Texas. Alvert Music did not file for bankruptcy. The bankruptcy court converted the Chapter 11 proceeding to a liquidation case under Chapter 7. In 1999, following bankruptcy court approval, DM Records, Inc. ("DM") purchased Bellmark's assets for $166,000. The assets subject to the sale were not defined, but rather included "all property of the company." The order approving the sale provided: "the sale of purchased assets is made as is, where is, without any representations or warranties concerning the estate's right, title or interest, if any, in such assets." Bellmark's bankruptcy case was closed in 2001. After purchasing Bellmark's assets, DM exploited the composition copyright of Whoomp!.

In 2002, Bell (doing business as Alvert Music) filed this copyright infringement action against DM in the Northern District of Texas seeking a declaratory judgment that Alvert Music—not DM, as purchaser of Bellmark's

assets—is the rightful owner of the composition copyright for Whoomp!.[2]  Bell also sought damages for the alleged infringement.  The action bounced around several courts before landing in the Eastern District of Texas in 2007.[3]

In 2008, the district court granted DM's motion to dismiss the complaint for lack of standing, finding that, in 2004, Bell had assigned to Bridgeport Music half of his interest in the composition copyrights at issue and all of his interest in copyright infringement actions.  Bell appealed the dismissal and this court reversed and remanded to the district court.

Finally, in 2012, the case went to trial.  At trial, the parties each elicited testimony about the Recording Agreement and the parties' subsequent actions that they claimed proved that either Bellmark or Alvert Music was assigned the composition copyright.  After the close of evidence at trial, both Bell and DM moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a).  Bell asked the district court to rule, as a matter of law, that the Recording Agreement and events surrounding the Recording Agreement showed that Tag Team transferred fifty percent of the Whoomp! composition copyright to Alvert Music.  DM asked the district court to rule that Bell could not show that he was intended to be a third party beneficiary to the Recording Agreement and that Bellmark was the only assignee.  After hearing extensive oral argument on the motions, the district court granted Bell's motion and

---

[2] Bell also brought suit claiming copyright infringement of a second song, "Dazzey Duks," which was governed by a different agreement.  The district court found DM liable as a matter of law for infringement of Dazzey Duks, and Bell elected statutory damages for the violation.  DM appeals the judgment only as it pertains to Whoomp!.

[3] In 2004, the district court for the Northern District of Texas transferred the case to the Eastern District of Texas—the site of Bellmark's bankruptcy proceedings—pursuant to 28 U.S.C. § 1404(a).  No. 3:02-cv-1408-G (ECF # 49).  The district court for the Eastern District of Texas accepted the transfer (No. 4:04-cv-190) and referred the case to the bankruptcy court (No. 04-04242).  In 2007, the bankruptcy court ruled that the case's relationship with Bellmark's bankruptcy proceeding was tenuous and withdrew reference, sending the case back to the district court, where it proceeded.

denied DM's motion.  Specifically, the court found that: 1) the interpretation of the Recording Agreement was a question of law under California law; 2) Bellmark is a separate entity from its affiliated designee publisher; and 3) Bellmark's affiliated designee publisher was Alvert Music.  Thus, Alvert Music was the owner of Whoomp! and DM was liable for copyright infringement.

After ruling on the ownership of the composition copyright as a matter of law, the district court submitted the question of damages to the jury.  Bell's counsel made a closing statement focused largely on DM's willfulness in infringing the copyright (including calling DM a thief), to which DM did not object.  DM's counsel also gave a closing statement, in which he rebutted Bell's characterization of willfulness and argued that the infringement was unintentional.  The jury found actual damages of $2,131,482.28 and statutory damages of $132,500 for DM's willful infringement of the Whoomp! composition copyright.  Bell elected to recover actual damages for DM's infringement of Whoomp!, and the district court entered a judgment to that effect.

After trial, DM filed a renewed motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b) and/or a motion for a new trial under Rule 59.  In its motion, DM argued for the first time that, even if the district court correctly found Alvert Music to be the assignee of fifty percent of the rights to the composition copyright, the court erred in not reading the Recording Agreement to have assigned the other fifty percent interest to Bellmark.  DM also urged the district court to find that the damages proofs were rendered erroneous by the court's ruling on ownership, and that Bell's "abusive" closing argument deprived DM of a fair trial.  The district court denied DM's Rule 50(b) motion.  The court found that DM had waived its "two assignments" argument because it raised this new interpretation of the Recording Agreement for the first time in its Rule 50(b) motion.  The court also

considered DM's argument illogical because it would leave Tag Team with no ownership interest in the copyright. The court ruled that Bell's closing statement did not prejudice the jury. DM timely appealed the denial of its original and renewed motions for judgment as a matter of law and the final judgment.

After appealing the denials of its Rule 50 motions, DM moved in the district court for relief from the final judgment pursuant to Federal Rule of Civil Procedure 60(b). DM claimed that Bell withheld a 2006 Security Agreement ("Security Agreement"), which allegedly assigned copyright infringement claims for Whoomp! to another party. DM argued that Bell fraudulently withheld this document from DM and that the document showed that Bell lacked standing to pursue copyright infringement claims. A panel of this court remanded this case for the limited purpose of asking the district court to state, in writing, whether it was inclined to deny or grant the Rule 60(b) motion. The district court wrote that it was inclined to deny DM's Rule 60(b) motion because production of the Security Agreement was not clearly called for by DM's discovery requests, DM had not shown that failure to obtain the document prevented it from fully and fairly presenting its case, and lack of standing is not an independent basis for relief under Rule 60(b). DM appealed the denial of its Rule 60 motion. This court consolidated the appeals.

## DISCUSSION

### I. Rule 50 Motions

DM raises two issues regarding the district court's interpretation of the Recording Agreement as assigning a single fifty percent interest to Alvert Music.

### A.

First, DM contends that the district court erred by interpreting the Recording Agreement as a matter of law, as opposed to allowing the jury to

No. 13-40878 c/w 14-40545

interpret the Recording Agreement. A choice of law clause in the Recording Agreement makes this a question of California law. Whether California law requires contract interpretation to be determined by a jury is a question of law, which is reviewed *de novo*. *See Lloyds of London v. Transcontinental Gas Pipe Line Corp.*, 101 F.3d 425, 429 (5th Cir. 1996).

California employs a liberal parol evidence rule to determine the intent of the contracting parties.

> [California] precludes evidence of a prior agreement or of a contemporaneous oral agreement to contradict terms included in a written instrument which the parties intend as the final expression of their agreement, but it does not exclude other evidence of the circumstances under which the agreement was made or to which it relates . . . or to explain an extrinsic ambiguity or otherwise interpret the terms of the agreement.

*Garcia v. Truck Ins. Exch.*, 682 P.2d 1100, 1104 (Cal. 1984) (alteration in original) (internal quotation marks and citation omitted); *see also* Cal. Civ. Proc. Code § 1856. Moreover, even if the agreement appears unambiguous on its face, extrinsic evidence may be offered if "relevant to prove a meaning to which the language of the instrument is reasonably susceptible." *Pac. Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co.*, 442 P.2d 641, 644 (Cal. 1968). "Indeed, it is reversible error for a trial court to refuse to consider such extrinsic evidence on the basis of the trial court's own conclusion that the language of the contract appears to be clear and unambiguous on its face." *Morey v. Vannucci*, 75 Cal. Rptr. 2d 573, 578 (Cal. Ct. App. 1998).

Even if the court admits extrinsic evidence, the interpretation of a contract is still a question of law for the court unless there is conflicting extrinsic evidence that requires a credibility determination. *See Garcia*, 682 P.2d at 1106 ("It is solely a judicial function to interpret a written contract unless the interpretation turns upon the credibility of extrinsic evidence, even when conflicting inferences may be drawn from uncontroverted evidence.");

*Parsons v. Bristol Dev. Co.*, 402 P.2d 839, 842 (Cal. 1965) (same). "Where the evidentiary facts are undisputed, and only the inferences to be drawn therefrom are disputed," interpretation is a question of law. *Winet v. Price*, 6 Cal. Rptr. 2d 554, 557 n.3 (Cal. Ct. App. 1992).

The district court did not err in interpreting the Recording Agreement without asking the jury to make any findings on the extrinsic evidence. Extrinsic evidence was properly offered by both parties in support of the parties' arguments that the provisions of the Recording Agreement regarding assignment of the composition copyright were ambiguous and that the Recording Agreement was reasonably susceptible to their preferred meaning. *See Pac. Gas*, 442 P.2d at 644. But none of the many pieces of extrinsic evidence offered by the parties was conflicting to the extent that the jury was needed to make a credibility determination. A credibility question that requires jury resolution arises when there are directly conflicting witness accounts. *See City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*, 181 P.3d 142, 156 (Cal. 2008) ("Deciding which of these two witnesses to believe was a credibility determination for the jury."); *Morey*, 75 Cal. Rptr. 2d at 580 ("The resolution of this conflicting evidence depended entirely on an assessment of the credibility of the opposing witnesses. This determination was properly made by the jury as trier of fact."); *Chevron U.S.A., Inc. v. Bragg Crane & Rigging Co.*, 225 Cal. Rptr. 742, 744 n.3 (Cal. Ct. App. 1986) (holding that the appellate court should undertake de novo review of a contract's interpretation, even when there was conflicting testimony about the parties' intent, because there was no conflict over "foundational extrinsic evidence") (internal quotation marks and citation omitted). At trial, only one person—Bell—testified about the parties' intent at

the time of contracting. DM did not present any witness who provided a conflicting account.[4]

DM misunderstands the standard for when extrinsic evidence must be submitted to a jury. DM claims that there were triable issues of fact "because there were many facts which were in conflict with Bell's ownership of the composition copyright." That there were pieces of undisputed evidence that supported a finding other than that which the court ultimately decided does not create an issue of fact. Under California law, the court need only involve a jury when "the interpretation of contractual language turns on a question of the credibility of *conflicting* extrinsic evidence." *Morey*, 75 Cal. Rptr. 2d at 579. If, as here, there are pieces of evidence which, while each undisputed, raise differing inferences, it is within the province of the court to draw inferences based on the evidence. In fact, at trial and in their arguments, the parties attacked the inferences that should be made from the evidence, but did not attack the evidence as untrue or not credible.

None of the pieces of allegedly conflicting evidence cited by DM presents a factual issue. Bell does not contest the facts that Bell did not receive mechanical royalties from Bellmark, that Bellmark alone prepared royalty statements and submitted them to Tag Team, that Bell responded to requests for information about composition copyright ownership in separate litigation by directing its opponent to Bellmark's records, or that Fox testified that his opinion was that Bellmark was the designee. Nor does Bell contest that he

---

[4] DM points to testimony from its expert witness, Samuel Fox. In Fox's opinion, the Recording Agreement made Bellmark the designee. This testimony rebuts the district court's ultimate conclusion that Bellmark was not the designee, but does not conflict with any other piece of extrinsic evidence, and did not call Bell's credibility into question. Bell testified about the intent of the parties, while Fox—as a non-contracting party—does not know the intent of the parties and opined solely on the Recording Agreement's language. Thus, there is no conflict requiring jury resolution.

never paid Tag Team any of the royalties he collected or that Bellmark never paid Bell mechanical royalties.  The only dispute is over the meaning of the Recording Agreement and the inferences that should be drawn from the numerous undisputed pieces of extrinsic evidence.  This is a question of law for the court, not for a jury.  *See Parsons*, 402 P.2d at 842 ("It is therefore solely a judicial function to interpret a written instrument unless the interpretation turns upon the credibility of extrinsic evidence.").

**B.**

Second, DM challenges the denial of its Rule 50(b) motion.  DM does not, on appeal, pursue the argument that the district court erred in determining that the Recording Agreement transferred a fifty percent interest in the composition copyright to "Bellmark's affiliated designee publisher," Alvert Music.  Rather, DM contends that, accepting that transfer, the court erred in not finding as a matter of law that the Recording Agreement also assigned a second fifty percent interest in the composition copyright to Bellmark.  By not raising this argument at trial or in its Rule 50(a) motion, Bellmark has waived its right to bring a Rule 50(b) motion on this ground.

Since a Rule 50(b) motion "is technically only a renewal of the [Rule 50(a) motion for judgment as a matter of law] . . . it cannot assert a ground that was not included in the [original] motion." *Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 172 (5th Cir. 1985) (internal quotation marks and citation omitted); *see also Arsement v. Spinnaker Exploration Co.*, 400 F.3d 238, 247 (5th Cir. 2005) ("If a party fails to raise an issue in its Rule 50(a)(1) motions at trial, it may not do so in its post-trial Rule 50(b) motion.") (citation omitted); 9B Charles Alan Wright & Arthur K. Miller, Federal Practice and Procedure § 2537 (3d ed.) ("[T]he district court only can grant the Rule 50(b) motion on the grounds advanced in the preverdict motion, because the former is conceived of as only a renewal of the latter.").

The grounds for DM's Rule 50(a) motion were different from those for its Rule 50(b) motion. DM originally moved for a directed verdict on the grounds that Bell "cannot, as a matter of law show that [he] was intended to be third party beneficiary to the Tag Team Agreement; hence [he] cannot show [he] is the owner of [Whoomp!]," and that "DM was expressly assigned *all* licenses in favor of Bellmark." DM argued that, based on the Recording Agreement (including Exhibit B thereto), "the only assignee is defined to be Bellmark." In its Rule 50(b) renewed motion, DM pivoted and argued for the first time that there must be two separate assignments, one to Alvert Music and the other to Bellmark. In its Rule 50(b) motion, DM admitted that, in its 50(a) motion, it pursued only its theory that there was a single assignment, to Bellmark.

In addition to simply not raising the "two assignments" theory in its 50(a) motion, DM expressly disclaimed that theory at the 50(a) hearing:

> [DM's counsel]: But then you go down to the next two paragraphs that have *the same transfer, the same transfer of 50 percent*, and it says subject to the agreement between the assignor and the assignee. And the only possible assignee could be Bellmark. Because Alvert [Music] is not a party to that agreement.
>
> The Court: The first paragraph is conveying 50 percent interest in the copyrights in and to the musical composition Whoomp! (There It Is). Right?
>
> [DM's counsel]: And that's what the second and the third paragraphs do as well. So only in one paragraph does it use the word "Bellmark's Affiliated Designee Publisher." And in the other two paragraphs—
>
> The Court: And then it goes on to say "And 50 percent"—
>
> [DM's Counsel]: *It's the same 50 percent. It can only be the same 50 percent.*

(emphasis added). Counsel's statements are in direct contradiction to its argument in the Rule 50(b) motion that "it becomes obvious that the second paragraph . . . must be read to refer to a separate 50% from the 50% referenced

in the first paragraph." Thus, DM raised the theory for the first time in its renewed Rule 50(b) motion that there were two assignments of a fifty percent interest in the copyright. *See McCann v. Tex. City Refining, Inc.*, 984 F.2d 667, 672–73 (5th Cir. 1993) (not permitting a post-judgment challenge on the sufficiency of the evidence for the second tier of Age Discrimination in Employment Act liability when the 50(a) motion addressed only the first tier of ADEA liability); *Allied Bank-West., N.A. v. Stein*, 996 F.2d 111, 115 (5th Cir. 1993) (overturning grant of judgment as a matter of law on different ground than that in the initial directed verdict); *Sulmeyer v. Coca Cola Co.*, 515 F.2d 835, 846 (5th Cir. 1975) (holding that plaintiff could not receive post-judgment relief on claims it did not raise at trial or in its original JMOL motion).

Moreover, permitting DM's Rule 50(b) motion on alternative grounds would not be consistent with the rule's purposes. The purposes of Rule 50(b) are "to enable the trial court to re-examine the question of evidentiary insufficiency as a matter of law if the jury returns a verdict contrary to the movant, and to alert the opposing party to the insufficiency before the case is submitted to the jury," thereby affording the opposing party an opportunity to cure any defects in proof should the motion have merit. *Scottish Heritable Trust, PLC v. Peat Marwick Main & Co.*, 81 F.3d 606, 610 (5th Cir. 1996) (internal quotation marks and citation omitted); *see also Dimmitt Agri Indus., Inc. v. CPC Int'l. Inc.*, 679 F.2d 516, 521 (5th Cir. 1982) ("The rationale for the rule that a [Rule 50(b) motion] cannot assert a ground not included in a motion for directed verdict is obviously to avoid 'ambushing' the trial court and opposing counsel.") (internal quotation marks and citation omitted); *Quinn v. Sw. Wood Prods., Inc.*, 597 F.2d 1018, 1025 (5th Cir. 1979) ("When a claimed deficiency in the evidence is called to the attention of the trial judge and of counsel before the jury has commenced deliberations, counsel still may do whatever can be done to mend his case. But if the court and counsel learn of

such a claim for the first time after verdict, both are ambushed and nothing can be done except by way of a complete new trial. It is contrary to the spirit of our procedures to permit counsel to be sandbagged by such tactics or the trial court to be so put in error.").

By not raising the two assignments theory at trial or in its Rule 50(a) motion, DM failed to provide Bell with an opportunity to cure defects in proof should the motion have merit. *See Scottish Heritable*, 81 F.3d at 610. Rather than offering its two assignments theory as an alternative ground for judgment as a matter of law at the close of evidence, DM expressly disclaimed this theory at the 50(a) stage. *See Abbott v. Equity Grp., Inc.*, 2 F.3d 613, 629 (5th Cir. 1993) ("[A]ppellants' theory requires the assertion of legal issues not previously raised; the introduction of additional evidence; and the analysis of a different law. The court was under no obligation to permit appellants to interject a new legal theory, without explanation, after they had failed to do so during three years of discovery, two additional years between the court's granting summary judgment and entering judgment, and almost two months following that entry."). Since DM has waived its argument based on the two assignments theory, we need not consider the theory's merits.

## II. Rule 60(b) motion

DM also appeals the district court's denial of is Rule 60(b) motion for relief from judgment based on fraud and lack of standing.[5] DM moved for relief under both Rule 60(b)(3) and Rule 60(b)(6) on the basis that it was prevented from presenting the defense of Bell's lack of standing because Bell never produced a 2006 Security Agreement in favor of Currency Corporation. DM

---

[5] The parties do not address whether the district court's inclination to deny DM's Rule 60(b) motion is a final appealable order. We hold that we have jurisdiction to review the order. *See Lopez Dominguez v. Gulf Coast Marine & Assocs.*, 607 F.3d 1066, 1076 (5th Cir. 2010).

No. 13-40878 c/w 14-40545

argues that the Security Agreement, along with a separate exhibit filed in 2000 (the "2000 Exhibit"), transferred infringement claims and ownership in the composition copyright.

This court reviews a denial of a Rule 60 motion for abuse of discretion. *Smith v. Alumax Extrusions, Inc.*, 868 F.2d 1469, 1471 (5th Cir. 1989). To the extent the Rule 60 motion challenges Bell's standing to bring the suit, this court employs de novo review. *See Frazar v. Ladd*, 457 F.3d 432, 435 (5th Cir. 2006) ("We review de novo . . . any questions of law underlying the district court's [Rule 60(b)] decision."); *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 659 (5th Cir. 2006) ("We review all questions of subject matter jurisdiction, including the justiciability issues of standing, ripeness, and mootness, *de novo*.").

DM is not entitled to Rule 60(b) relief on the basis of the allegedly withheld Security Agreement because, even if improperly withheld, it would not have affected Bell's standing to sue and thus would not have impacted DM's defense. A "court may relieve a party . . . from a final judgment, order, or proceeding" for "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." Fed. R. Civ. P. 60(b)(3). "A party making a Rule 60(b)(3) motion must establish by clear and convincing evidence (1) that the adverse party engaged in fraud or other misconduct and (2) *that this misconduct prevented the moving party from fully and fairly presenting his case.*" *Washington v. Patlis*, 916 F.2d 1036, 1039 (5th Cir. 1990) (emphasis added) (internal quotation marks and citation omitted); *see also Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1339 (5th Cir. 1978) ("The conduct complained of must be such as prevented the losing party from fully and fairly presenting his case or defense.").

Even if DM's interpretation of the Security Agreement as transferring Bell's entire ownership interest in Whoomp! has merit, this establishes only

14

that Bell would have lacked standing to sue in 2006. But Bell originally filed his complaint in this action in 2002 and "standing is . . . determined as of the commencement of the suit." *Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 458 (5th Cir. 2005) (alteration in original) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 571–72 n.5 (1992)). Neither is there any merit to DM's argument that the transfer occurred in 2000. The 2000 Exhibit does not effectuate an assignment; moreover the 2000 Exhibit *was* produced and therefore cannot be the basis of a Rule 60(b) motion. It is not plausible that the non-produced 2006 Security Agreement somehow made the assignment retroactive to 2000.

In the alternative, DM contends that Bell's lack of standing, even if not fraudulently concealed, is an independent basis for overturning the judgment under Rule 60(b)(6). DM's argument must fail for the same reason; because standing is determined at the time of suit, the 2006 Security Agreement does not establish that Bell did not own the copyright in 2002 when Bell commenced the suit. For this basic reason, the "extraordinary circumstances" necessary to grant Rule 60(b)(6) relief are not present. *See Hess v. Cockrell*, 281 F.3d 212, 216 (5th Cir. 2002) ("Rule 60(b)(6) motions will be granted only if extraordinary circumstances are present.") (internal quotation marks and citation omitted).

### III. Damages Award

DM argues that the jury's damages award is rendered erroneous by the district court's ruling on ownership and its jury instructions. The jury awarded Bell $2,131,482.28 in actual damages for the infringement in the Whoomp! composition copyright, a figure that is essentially 100 percent of the royalties DM collected from licensing Whoomp!. DM contends that, since the court ruled that Bell owned only fifty percent of the copyright, he should have only been awarded, at most, fifty percent of the royalties. DM urges the panel to find error in the district court's failure to instruct the jury that it was only

No. 13-40878 c/w 14-40545

permitted to award Bell damages for its fifty percent interest in the infringement.  Specifically, DM claims that the following instruction was erroneous because it misled the jury into believing that all royalties must go to Bell: that DM "does not now have, and it has never had, an ownership interest in the musical composition copyright for Whoomp!".

## A.

Although this court typically reviews jury instructions for abuse of discretion, *Duvall v. Dallas Cnty., Tex.*, 631 F.3d 203, 206 (5th Cir. 2011), Federal Rule of Civil Procedure 51(c) requires a party to object to an instruction, either before it is given or before the jury begins to deliberate.  Fed. R. Civ. P. 51.  If a party does not object, this court reviews jury instructions for plain error.  *Dahlen v. Gulf Crews, Inc.*, 281 F.3d 487, 494 (5th Cir. 2002).

DM did not object to the instruction it now asserts is improper. Therefore, we review the instruction for plain error.[6]  "In reviewing jury instructions for plain error, we are exceedingly deferential to the trial court." *Id.* (internal citation and quotation marks omitted); *see also Branch-Hines v. Hebert*, 939 F.2d 1311, 1317 (5th Cir. 1991).  Under plain error review, "[r]eversal is appropriate if the error is (1) plain, (2) affects the appellant's substantial rights, and (3) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Alaniz v. Zamora-Quezada*, 591 F.3d 761, 776 (5th Cir. 2009) (citation omitted).

---

[6] DM urges the panel to review this issue de novo because "the calculation of damages emanates from an interpretation of a contract."  In *Art Midwest Inc. v. Atl. Ltd. P'ship XII*, 742 F.3d 206, 213–14 (5th Cir. 2014), this court employed de novo review because damages depended on the interpretation of a partnership contract, specifically a provision of the contract that dealt directly with the apportionment of damages.  De novo review is not appropriate here because the calculation of damages does not stem directly from an interpretation of the Recording Agreement.  The district court interpreted the Recording Agreement as a matter of law and instructed the jury accordingly.  The jury was left to determine damages as a fact issue by considering the testimony, including that of experts, regarding profits and losses.  Thus, plain error review is appropriate.

## B.

The district court did not plainly err in instructing the jury.  The district court properly instructed the jury that Bell "was and is an owner of a 50 percent interest in the copyright in the musical composition Whoomp! (There It Is) by Tag Team."  The district court also was correct in instructing the jury that DM "does not now have, and it has never had, an ownership interest in the musical composition copyright for Whoomp!".  DM argues that these two instructions misled the jury into thinking that all royalties must go to Bell because the court did not define any other entity as having an entitlement to them and DM was characterized as clearly not having any entitlement to them.  DM has not shown that the instructions were clearly erroneous.  These two statements are a correct summary of the legal conclusions made by the court.  Further, since there was testimony that Tag Team owned a 50 percent interest in the copyright, it is difficult to see how the jury was misled to believe that no other party could be entitled to the royalties.  There was therefore no plain error in the jury instructions.

Apart from the propriety of the jury instructions, DM's argument essentially seems to be that Bell, as fifty percent owner of the copyright, may not, as a matter of law, recover damages for Tag Team's share.  The jury's award of over $2 million in damages is, in fact, the full amount of all royalties received by DM without a reduction for Tag Team's fifty percent share.  It appears to be an issue of first impression in our court whether a partial owner of a copyright can ever be awarded infringement damages for his co-owner's share.  In *Edward B. Marks Music Corp. v. Jerry Vogel Music Co.*, 140 F.2d 268 (2d Cir. 1944), the Second Circuit held that "the recovery shall be confined to the plaintiff's own part; that is to say, to its own actual damages, to its proper share of any statutory damages, and to its proper share of the profits." *Id.* at 270; *see also Manno v. Tenn. Prod. Ctr., Inc.*, 657 F. Supp. 2d 425, 433 (S.D.N.Y.

2009) ("*Edward B. Marks Music Corp.* makes clear that a co-owner of a copyright is limited to its 'proper share' of any statutory damage award.") (citation omitted). *Edward B. Marks* is distinguishable because it dealt with the nonjoinder of a copyright co-owner and did not involve a situation where there was evidence from which the jury could find that the plaintiff was administrator for all of the royalties. *See Edward B. Marks*, 140 F.2d at 269. Here, there was evidence in the record from which the jury could have determined, as it did, that Bell is entitled to 100 percent of the royalties in the first instance. There was testimony that Bell is the administrator of 100 percent of the royalties and is responsible for accounting to Tag Team. As such, the jury could have determined that Bell was properly awarded 100 percent of the royalties, from which it could pay Tag Team its share. *See, e.g.*, *Edgenet, Inc. v. GS1 AIBSL*, No. 09-CV-65, 2010 WL 55843, at *5 (E.D. Wis. Jan. 5, 2010) ("In a case where infringement damages are awarded to only one of two co-owners of a copyright, redress is properly sought through a suit between the co-owners and not through further litigation against the defendant.") (citation omitted); *Copyright.net Music Publ'g. LLC v. MP3.com*, 256 F. Supp. 2d 214, 218 (S.D.N.Y. 2003) (upholding damage awards that contained more than the plaintiff's share, ruling that the proper resolution was for the co-owner to bring an action against the prevailing plaintiff for its share).

## IV. Bell's Closing Statement

Finally, DM maintains that the district court erred in denying DM's Rule 59 motion for a new trial and in not finding that Bell's closing argument—in which Bell's counsel repeatedly accused DM of being a thief and stealing from Bell—was abusive and improper.

### A.

Since DM did not object to Bell's closing statement, this court reviews for plain error. *United States v. George*, 201 F.3d 370, 373 (5th Cir. 2000);

*Schleunes v. Am. Cas. Co. of Reading, Pa.*, 528 F.2d 634, 638 (5th Cir. 1976). "Reversal is appropriate if the error is (1) plain, (2) affects the appellant's substantial rights, and (3) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Alaniz*, 591 F.3d at 776.  A court has discretion to grant a new trial under Federal Rule of Civil Procedure 59 "where it is necessary to prevent an injustice." *United States v. Flores*, 981 F.2d 231, 237 (5th Cir. 1993) (internal quotation marks and citation omitted).  "In determining the effect of statements made during closing argument, we consider the record as a whole and not merely isolated remarks." *Daniel v. Ergon, Inc.*, 892 F.2d 403, 411 (5th Cir. 1990) (citation omitted).

**B.**

The district court's denial of DM's Rule 59 motion for a new trial was not plainly erroneous.  A closing statement may implicate the interest of substantial justice when counsel's assertions are "either false or without basis in the record." *Wallner v. Ziegler*, 470 F. App'x 230, 233 (5th Cir. 2012) (citing *Hall v. Freese*, 735 F.2d 956 (5th Cir. 1984)); *see also Alaniz*, 591 F.3d at 779 (finding no plain error where statements "were sufficiently based on the record").  Bell's closing statement does not contain material facts not in evidence and does not rise to the level affecting substantial justice.  *See Edwards v. Sears, Roebuck & Co.*, 512 F.2d 276, 284–86 (5th Cir. 1975) (ordering new trial where closing argument contained an "untrue admission").  Evidence was presented at trial from which the jury could find that DM's conduct was willful and that DM stole the copyrights from Bell.  The jury heard evidence of DM's shifting defense theories, and evidence that DM falsely created documents announcing that Alvert Music transferred ownership to DM.  The jury also heard testimony from DM's principals from which the jury could determine credibility.  Bell's counsel's statements that DM stole the copyrights were not without basis in the record.

No. 13-40878 c/w 14-40545

Further, any prejudice from Bell's closing statement was minimized. First, any prejudice was offset by the district court's instruction that "[s]tatements and arguments of the attorney are intended only to assist you in understanding the evidence and the parties' contentions and are not evidence of the facts or instructions on the law." *See Learmonth v. Sears, Roebuck & Co.*, 631 F.3d 724, 732–33 (5th Cir. 2011); *Nissho-Iwai Co. v. Occidental Crude Sales, Inc.*, 848 F.2d 613, 620 (5th Cir. 1988). Second, the disputed statements went to DM's willfulness in infringing, an element that had little or no effect on the jury's verdict. The jury was only deciding damages, so there was no risk that the allegedly improper statements influenced a determination of liability. Further, while the jury did find DM's infringement of Whoomp! to be willful, this finding increased the amount of statutory damages only.[7] A prevailing plaintiff in a copyright infringement action must elect to recover either actual damages or statutory damages. 17 U.S.C. § 504(a). Here, Bell elected actual damages, which are not affected by willfulness. Thus, it was not plain error for the district court to allow Bell's closing statement and not to grant DM's motion for a new trial.

## CONCLUSION

For the foregoing reasons, we AFFIRM the various district court rulings that DM challenges on appeal.

---

[7] A finding of willfulness may increase statutory damages from up to $30,000 to up to $150,000. 17 U.S.C. § 504(c).