# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 13, 2023

Lyle W. Cayce
Clerk

No. 22-10415

Travis Heckman,

*Plaintiff—Appellant*,

*versus*

Raynols Gonzalez-Caballero; Cuba Transport, L.L.C.,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:21-CV-161

Before Higginbotham, Smith, and Engelhardt, *Circuit Judges*.
Patrick E. Higginbotham, *Circuit Judge*:

A trucker collided with Travis Heckman on I-20. A jury found the trucker liable for the accident; while Heckman sought damages in the millions, citing medical bills, impact on earnings, and pain and suffering, the jury awarded $37,500. Heckman moved for a new trial or remittitur, citing defense counsel's remarks at summation and a *Batson* violation. The trial court denied the motion. We AFFIRM.

No. 22-10415

## I.

On March 7, 2019, Heckman's car collided with an 18-wheeler, causing Heckman "to spin out into the center median striking the guardrail cables." Raynols Gonzalez-Caballero was driving the 18-wheeler for Cuba Transport, LLC (collectively "Caballero").[1] Several months after the collision, Heckman underwent a cervical fusion surgery on his neck and an ulnar nerve transposition surgery. On February 19, 2021, Heckman sued Caballero in the Northern District of Texas. By the Parties' consent, District Judge Reed O'Connor reassigned the case to Magistrate Judge Hal Ray, and the case was set for jury trial. Three episodes of the trial give rise to Heckman's claims: an *in limine* motion, *voir dire*, and defense counsel's closing argument.

Prior to trial, the trial court granted Heckman's *in limine* motion, which prohibited:

> Any of the following or similar comments or references or inferences to same because such claims are irrelevant and prejudicial to Plaintiff: (1) reference that Plaintiff will or might be made "rich" because of this lawsuit; (2) reference that this lawsuit is a "lottery" ticket that Plaintiff is holding; (3) reference that Plaintiff has or might "benefit financially" from this lawsuit.

Two issues arose in *voir dire*. First, when defense counsel struck the only two Black members of venire, Heckman challenged the peremptory

---

[1] The Parties jointly refer to Defendants-Appellees—the driver as well as the transportation company by which he is employed—as "Caballero." For clarity, we adopt this convention as well.

No. 22-10415

strikes as a *Batson* violation.[2] Pursuant to *Batson*'s tripartite framework, the trial court first found that the strikes created a *prima facie* case of discrimination. The trial court then recounted defense counsel's proffered reasons for the strikes, concluding that defense counsel had met their burden. Finally, the trial court undertook "a sensitive inquiry into the circumstantial and the direct evidence" of discrimination to determine the veracity of those reasons, which included a review of counsel's notes and hearing additional argument. Ultimately, the trial court rejected the *Batson* challenge.

Second, defense counsel asked the venire panel: "How many people think there's way too many personal injury lawsuits filed today?" Several venirepersons agreed. When asked why, Venireperson No. 13 responded: "Texas Hammer." Defense counsel responded: "I was waiting for someone to bring him up." Venireperson No. 13 continued: "It just seems like we're just too much trying to get free money, easy money," a statement with which several jurors agreed. But Venireperson No. 10 mentioned seeing commercials for Mr. Adler and felt that "he's going to do everything he can to make sure that I come out, you know, with lots of money," and Venireperson No. 9 agreed with this positive association with "the Texas Hammer." Aside from the comment regarding waiting for someone to bring him up, defense counsel never explicitly referenced Adler or "the Hammer," nor did plaintiff's counsel ever object to any of the questioning.

Finally, during closing argument, defense counsel placed an emphasis on the word "hammer," purportedly harkening back to the discussion undertaken during *voir dire*. In one example, defense counsel asked the jury whether it was "odd that [plaintiff's counsel] kept hammering questions at

---

[2] *See generally Batson v. Kentucky*, 476 U.S. 79 (1986) (holding that the use of peremptory challenges to remove a juror from the jury pool based on race violates the Equal Protection Clause of the Fourteenth Amendment).

No. 22-10415

[an expert physician testifying] but not letting him provide an answer?" In the other spoken example, defense counsel argued that "irregardless [*sic*] of the issue of negligence, Plaintiff is contending that you should hammer the Defendant for $2,198,000 for this severe accident[.]" Defense counsel also created slides to be shown during closing arguments that displayed the word "hammer" in a similar context—*e.g.*, "HAMMER-up litigation damages" or "HAMMER UP $$$$." Notably, defense counsel—distinct from Caballero's appellate counsel—attests that technical issues (a severed connection) and time limitations prevented counsel from showing many of the slides to the jury and he cannot "determine with certainty which slides were omitted during closing [arguments]." Ultimately, the jury found Caballero solely liable for the accident and awarded Heckman $37,500.

Heckman moved for a new trial, arguing that defense counsel's improper summation was prejudicial and that the trial court erred in rejecting the *Batson* challenge. The district court ruled that it "d[id] not view the comments as attempts to insert Mr. Adler and his marketing efforts into the trial of Heckman's case, and there is no evidence to show that the arguments of defense counsel were false or baseless." Regarding the *Batson* challenge, the trial court reviewed the steps it undertook to arrive at its decision and concluded "that defense counsel's peremptory strikes of venireperson 1 and 2 did not result from intentional discrimination based on race."

## II.

A trial court's denial of a motion for a new trial "will be affirmed unless there is a clear showing of an absolute absence of evidence to support the jury's verdict, thus indicating that the trial court had abused its discretion

in refusing to find the jury's verdict contrary to the great weight of the evidence."[3] This standard of review is "burdensome for an appellant."[4]

## III.

## A.

With respect to statements made in closing argument, "a 'district court may order a new trial if improper closing argument irreparably prejudices a jury verdict or if a jury fails to follow instructions.'"[5] "In determining the effect of statements made during closing argument, we consider the record as a whole and not merely isolated remarks."[6]

> The decision to grant or deny a motion for a new trial rests in the sound discretion of the trial judge; that discretion can be set aside only upon a clear showing of abuse, which evinces an error of law in a ruling below. Where, as here, the trial judge has denied the motion and left the decision of the jury in tact [*sic*], this circuit has shown even greater deference to the trial judge's discretion. However, this deference cannot exceed a due regard for what is right and the interests of justice.[7]

---

[3] *Vital v. Nat'l Oilwell Varco, L.P.*, 685 F. App'x 355, 359 (5th Cir. 2017) (unpublished) (per curiam) (quoting *Lane v. R.A. Sims, Jr., Inc.*, 241 F.3d 439, 444 (5th Cir. 2001)).

[4] *Id.*

[5] *Wallner v. Ziegler*, 470 F. App'x 230, 232 (5th Cir. 2012) (unpublished) (per curiam) (quoting *Nissho–Iwai Co., Ltd. v. Occidental Crude Sales, Inc.*, 848 F.2d 613, 619 (5th Cir. 1988)).

[6] *In re Isbell Recs., Inc.*, 774 F.3d 859, 872 (5th Cir. 2014) (quoting *Daniel v. Ergon, Inc.*, 892 F.2d 403, 411 (5th Cir. 1990)).

[7] *Westbrook v. Gen. Tire & Rubber Co.*, 754 F.2d 1233, 1241 (5th Cir. 1985) (per curiam) (citations omitted).

No. 22-10415

In sum, "[j]ury verdicts on damages may be overturned only upon a clear showing of excessiveness or upon a showing that they were influenced by passion or prejudice,"[8] and "[w]hen a jury verdict results from passion or prejudice, a new trial is the proper remedy rather than remittitur."[9]

The heart of Heckman's argument on appeal is that defense counsel prejudiced the jury by his allusions to a prominent local attorney, Jim Adler, who advertises on television and refers to himself as "the Hammer" because he "hammers" insurance companies. Heckman accents this point, referencing external materials highlighting the perils of attorney advertising vis-à-vis the "honor and dignity of the legal profession." Finally, Heckman argues that the statements violated the trial court's order to comply with relevant standards of professionalism and violated the trial court's *in limine* order.

While defense counsel's references—in statements or slides—may have been inappropriate, they do not warrant a new trial. We lack the trial judge's advantage of courtroom context in determining the extent of the jury's perceived connection between the comments and Adler, and the able trial judge concluded that defense counsel's statements did not constitute an "attempt[] to insert Mr. Adler and his marketing efforts into the trial." Moreover, though some members of the venire spoke of Adler in a negative or disparaging way, others spoke positively of him and his commercials, mitigating the prejudicial impact of such a connection if it did indeed exist. And as the trial court observed: "the fact that Heckman's counsel did not object to the use of 'hammer' in [Caballero's] closing argument is a telling indication that they did not think at the time the references were so

---

[8] *Id.* (citations omitted).

[9] *Id.* (collecting cases).

prejudicial that they warranted an objection or request for a limiting instruction."

Reversal or remittitur is appropriate only when, in closing arguments, "counsel's assertions are 'either false or without basis in the record.'"[10] For example, when a new trial was requested because counsel in summation referred to a party as "a thief," this Court affirmed the denial of a new trial because there was evidence that the individual in question stole copyright.[11] By contrast, this Court ordered a new trial when counsel made multiple inappropriate remarks, including referring to the victim "as a woman who had flouted respect for marriage vows, who had used illegal drugs, and who was trying to take advantage of the good people of rural northern Mississippi."[12] But even amidst such remarks, we made clear that we "would not reverse the district court . . . on the basis of these remarks alone, absent a timely objection."[13] Rather, we instructed that the inappropriate comments made by counsel must be considered in conjunction with a particularly low award and an overwhelming amount of evidence: "[g]iven the strength of the plaintiff's evidence on causation and the uncontradicted testimony that she is totally disabled and will incur enormous expenses over her lifetime as a result of her disability, we think the jury verdict of $55,000 strongly indicates that the jury's deliberation in this case was not impartial."[14]

Here, the record falls far short of indisputable evidence of injury and disability that would compel a conclusion that the jury would have otherwise

---

[10] *In re Isbell*, 774 F.3d at 872 (quoting *Wallner*, 470 F. App'x at 233).

[11] *Id.*

[12] *Hall v. Freese*, 735 F.2d 956, 960 (5th Cir. 1984).

[13] *Id.* at 962.

[14] *Id.* at 959–60.

awarded a higher verdict but for the statements at issue. Indeed, the evidence shows: the original police report was that neither driver was injured; Heckman had a preexisting spinal condition; Heckman was released from physical therapy with no restrictions, an ability to perform the work required at his job, and no loss of earning capacity; medical bills, which informed the damages calculation, were substantially inflated—even considered "grossly excessive" by one expert; and contrary medical evidence regarding the necessity of the surgery or the causation. In other words, the damages award was likely based on record evidence rather than defense counsel's lamentable references. And as the trial court observed, the evidence regarding excessive, inflated billing suggests that the word "hammer," as used colloquially meaning to "drive" or "build,"[15] has a basis in the record.[16]

Any prejudice was also undermined by the usual instructions. In analogous cases, we have found comfort in the trial court's limiting instructions as minimizing any prejudicial effect.[17] So do we. Here, the trial court gave the pattern instructions: (i) "[t]he testimony of the witnesses and other exhibits introduced by the parties constitute the evidence"; (ii) that "statements of counsel are not evidence; they are only arguments"; (iii) "to decide the case in a fair, impartial, and unbiased manner, based entirely on the law and on the evidence presented to you in the courtroom"; and (iv) that jurors "may not be influenced by passion, prejudice, or sympathy that [they] might have for the plaintiff or the defendant in arriving at [their] verdict." As

---

[15] *See Hammer*, DICTIONARY.COM, https://www.dictionary.com/browse/hammer (last visited Mar. 6, 2023).

[16] *See In re Isbell*, 774 F.3d at 872 (declining to order a new trial where potentially inflammatory closing statements "were not without basis in the record").

[17] *See, e.g., id.*

"[j]uries are presumed to follow the instructions of the court,"[18] we conclude that the trial court's instructions "effectively minimized any prejudice flowing from [the] improper remarks."[19]

Heckman's argument that counsel's references violated *in limine* orders and instructions is similarly unpersuasive. The *in limine* order at issue is Heckman's motion to bar defense counsel from any "comments or references or inferences" that he would get "rich," *e.g.*, winning the "lottery." Reasonable minds can differ as to whether referencing "hammering up" damages is akin to making Heckman rich or to benefitting the medical professionals who inflated their bills, but Heckman's interpretation is far from singularly correct, and "legal error must be clear or obvious, rather than subject to reasonable dispute."[20] And once again, "[t]ellingly, an objection was not made when the statements were made."[21]

In sum, any impropriety of counsel's statements notwithstanding, the strong bar to remittitur or a grant of a new trial, the evidence justifying a low damages calculation, the lack of concern in the moment, and the jury instructions neuter Heckman's claim to a new trial on the basis of defense counsel's closing arguments.

---

[18] *Hollis v. Provident Life & Acc. Ins. Co.*, 259 F.3d 410, 417 (5th Cir. 2001).

[19] *Wallner*, 470 F. App'x at 233 (citation omitted); *see also Learmonth v. Sears, Roebuck & Co.*, 631 F.3d 724, 732–33 (5th Cir. 2011) (holding that any prejudice flowing from improper comments "was effectively cured by the court's sustainment of Sears' objections to each of the statements at trial, *as well as by the court's jury charge*" (emphasis added)).

[20] *Puckett v. United States*, 556 U.S. 129, 135 (2009).

[21] *Vital*, 685 F. App'x at 358.

No. 22-10415

### B.

"*Batson* claims are evaluated under a three-step process: (1) [a party] makes a prima facie showing that the peremptory challenge was based on race; (2) the [opposing party] provides a race-neutral basis for the strike; (3) the trial court determines whether the [striking party] purposefully discriminated against the juror."[22] The trial court's determination must be supported by the challenging party, which effectively "ha[s] the burden to show that the reason given was pretextual or otherwise inadequate."[23] When a *Batson* challenge is raised at trial and then again on appeal, "[w]e pay great deference to the trial judge's decision."[24] It follows that "we will affirm the district court's ruling on a *Batson* challenge unless it is clearly erroneous, that is unless we are left with the definite and firm conviction that a mistake was committed."[25]

The Parties agree that defense counsel used two peremptory strikes against the only two Black persons on the venire panel. The trial court concluded that these strikes made a *prima facie* case of discrimination. The trial court found that Caballero articulated a sufficient non-discriminatory explanation: Venireperson No. 1, Golden, was struck in light of "questions

---

[22] *Broadnax v. Lumpkin*, 987 F.3d 400, 409 (5th Cir. 2021) (citing *Foster v. Chatman*, 578 U.S. 488, 499 (2016)), *cert. denied*, 142 S. Ct. 859 (2022).

*Batson* challenges typically arise in criminal or habeas contexts, but *Batson*'s framework squarely applies to traditional civil suits. *See, e.g.*, *Great Plains Equip., Inc. v. Koch Gathering Sys., Inc.*, 45 F.3d 962, 964 (5th Cir. 1995) ("A party to a civil suit can challenge another party's use of a peremptory strike that excludes a prospective juror on the basis of that juror's race." (citations omitted)).

[23] *Great Plains*, 45 F.3d at 965.

[24] *Palmer v. Lares*, 42 F.3d 975, 979 (5th Cir. 1995) (quoting *United States v. Hinojosa*, 958 F.2d 624, 632 (5th Cir. 1992)).

[25] *Great Plains*, 45 F.3d at 964 (citation omitted).

about his ability to follow the Court's instructions and . . . holding [Caballero] to a higher standard than an ordinary person," while Venireperson No. 2, Garnett, was struck because she was a social worker and thus, according to defense counsel, may be more sympathetic to an injured plaintiff. The trial court then reviewed the annotations and marks regarding the jurors stricken peremptorily and compared the two peremptorily stricken jurors to other jurors. After undertaking "a sensitive inquiry into the circumstantial and the direct evidence" of discrimination, the trial court found "no direct evidence" of inappropriate bias and concluded that the "circumstantial evidence that was suggested . . . [wa]s not persuasive enough to convince [the court] that intentional discrimination has been proven on these facts."

On appeal, Heckman argues that Magistrate Judge Ray "was reluctant to make a finding that [] Caballero's striking of all the black jurors was race discrimination," and that such discrimination was present, evidenced by a side-by-side comparison of jurors and implicit bias. We disagree.

First, "[t]he Supreme Court has instructed that, when analyzing *Batson* challenges, 'bare statistics' are not the be-all end-all";[26] instead, for "statistical evidence to be relevant, data concerning the entire jury pool is necessary. The number of strikes used to excuse minority . . . jury pool members is irrelevant on its own."[27] Thus, that Caballero used peremptory

---

[26] *Chamberlin v. Fisher*, 885 F.3d 832, 840 (5th Cir. 2018) (en banc) (quoting *Miller-El v. Dretke*, 545 U.S. 231, 241 (2005)).

[27] *Sheppard v. Davis*, 967 F.3d 458, 472 n.14 (5th Cir. 2020) (quoting *Medellin v. Dretke*, 371 F.3d 270, 278–79 (5th Cir. 2004)).

strikes to "remove 100% of the nonwhite veniremembers" does not, in itself, establish discrimination.[28]

Second, scrutiny into the two strikes at issue—both in isolation and in the context of the other strikes—undermines Heckman's argument. Consider Ms. Garnett. Defense counsel stated that "our basis for striking her is the fact that she's a social worker. In my experience, people that work in the social work industry are generally more sympathetic, and that's the reason that we struck her." Thereafter, Heckman's counsel argued that social workers are *less* sympathetic as they "have become very skeptical of individuals because . . . they're always dealing with people who aren't telling the truth." Subsequently, Heckman's counsel suggested that a "children's programming librarian" and a "patient coordinator" are equally sympathetic but were not stricken, suggesting racial bias. Differing views counsel have as to social workers' sympathy—or lack thereof—offers not only a clearer explanation, but a plausible non-pretextual reason. Caballero statistically reframes the argument persuasively: defense counsel struck 100% of social workers among the entire venire panel who may be especially sympathetic jurors. Absent any additional indicia of discrimination in counsel's notes or statements, this strike does not give rise to strong evidence of discrimination.

Now consider Mr. Golden.  Defense counsel's peremptory strike was used based on a conversation defense counsel undertook focusing on the standards of care owed by commercial truck drivers. In this open discussion, several venirepersons voiced—to varying degrees—some concern that they may hold truck drivers' driving "to a higher standard of care . . . just by virtue of the fact they're driving a truck." After defense counsel probed multiple venirepersons' beliefs on this issue, defense moved to strike two for cause.

---

[28] *Broadnax*, 987 F.3d at 412.

The trial court denied the strike as to Venireperson No. 1, Mr. Golden, who is Black, but granted the strike as to Venireperson No. 4, Mr. Mitchell, who is not; the trial court distinguished the two challenges based on the different degrees of reluctance the respective venirepersons evinced with respect to the standard of care they believed truck drivers owed as well as their willingness or ability to disregard that instinct and follow the court's instructions on this topic. Subsequently, defense counsel used a peremptory strike on Mr. Golden.

Heckman argues that other venirepersons expressed similar concerns regarding 18-wheel truck drivers' duties but were not peremptorily struck, giving rise to an inference of discrimination. There is more to the story, though: of the multiple members of the venire who expressed such concerns, defense counsel *only* challenged two for cause, meaning defense counsel's concerns on this issue about other venirepersons were assuaged by the entirety of the discussion. Of the two challenged for cause, Mitchell—who is not Black—was removed, but Golden—who is Black—was not, prompting defense counsel to use a peremptory strike based on the same concern. Where a party has successfully challenged another juror on the same grounds for cause and attempted to do so again, it could be said that the "challenge for cause might have been justified," thereby providing a sufficient non-pretextual reason for the challenge and diminishing the inference of discrimination—particularly where the striking party's explanation for a peremptory strike "need not rise to the level justifying exercise of a challenge for cause."[29] Moreover, Caballero's reframing of relevant statistics of the

---

[29] *United States v. Forbes*, 816 F.2d 1006, 1010 (5th Cir. 1987) (holding that the district court's observation that "'a challenge for cause might have been justified' as to this juror" was "more than sufficient under *Batson*, which emphasized that 'the prosecutor's explanation need not rise to the level justifying exercise of a challenge for cause'" (quoting *Batson*, 476 U.S. at 97)).

challenge process is again persuasive: defense counsel struck 100% "of the venire members who were challenged but not removed for cause."

Finally, Heckman finds no refuge in arguments sounding in implicit bias. "*Batson* is not designed to root out implicit bias, as Justices Breyer and Marshall . . . have discussed in some depth."[30]

Given no direct evidence of discrimination for the challenges, nominal circumstantial evidence (the treatment of minimally comparable jurors), and the deference this Court gives to a trial court with respect to *Batson* rulings, Heckman's *Batson* claim does not warrant a new trial.

\*\*\*\*\*

We AFFIRM.

---

[30] *Shirley v. Yates*, 807 F.3d 1090, 1110 n.26 (9th Cir. 2015), as amended (Mar. 21, 2016); *see Miller–El*, 545 U.S. at 267–68 (Breyer, J., concurring) (citing *Batson*, 476 U.S. at 106 (Marshall, J., concurring)).